UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | | |
|---|---|---|
| DAVID JOERN and DENNIS JOERN, | ) ) ) ) | NO.   CV-10-0134-JLQ |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) ) ) ) | **ORDER GRANTING MOTION TO AMEND AND MOTION FOR TEMPORARY RESTRAINING ORDER** |
| OCWEN LOAN SERVICING, LLC, a Florida Corporation, et al., | ) ) ) ) | |
| Defendants. | ) ) ) | |

    On April 30, 2010, Plaintiff commenced the instant action against Ocwen Loan Servicing, LLC ("Ocwen") and Quality Loan Servicing ("Quality Loan"), alleging that Plaintiffs were unlawfully treated and defrauded in connection with the refinancing of their home equity loan. The parties are **BEFORE THE COURT** on Plaintiffs' Motion for Restraining Order (Ct. Rec. 26) filed July 12, 2010.  The court herein also considers, on an expedited basis, Plaintiffs' Motion to Amend (Ct. Rec. 17). On July 13, 2010, the court held a telephonic hearing.  Participating attorneys were Alan L. McNeil on behalf of Plaintiffs and Robert Norman, Jr. on behalf of Defendant Ocwen.  Plaintiffs were also represented by legal intern, Sophia A. Medina.  By their motion, Plaintiffs seek to enjoin the foreclosure sale of their home, which is scheduled for July 16, 2010.  The following

ORDER - 1

order is intended to memorialize and supplement the oral ruling of the court. Having read and considered the papers submitted in connection with this matter, the court grants the motion for temporary restraining order for the reasons which follow.

## I. *BACKGROUND*

### A. Factual Summary

Plaintiffs are the owners of a home located in Spokane, Washington. In September 2006, Plaintiffs took out a line of credit against their home, through Fidelity Mortgage, in the amount of $97,960.00. Plaintiffs were required to make monthly payments in the amount of $852.88 per month. In May 2007, Plaintiffs refinanced their loan and borrowed $121,000 against their home, through Fidelity Mortgage. Monthly payments were to be $820.51. Plaintiffs subsequently defaulted on the loan, resulting in a Notice of Default on or about February 18, 2010. At that time, the Plaintiffs were in arrears in the amount of $7,317.36. At the time Plaintiffs filed their Complaint, the sale had been continued from June 25, 2010 to July 16, 2010.

### B. Procedural History

Plaintiff filed the instant action on April 30, 2010. The Complaint (as well as the Amended Complaint) alleges causes of action against Defendants for: breach of covenant of good faith and fair dealing, fraud, negligent misrepresentation, and violations of the Washington Consumer Protection Act, RESPA ("Real Estate Settlement Procedures Act", 12 USC § 1601), the Truth-in-Lending Act (TILA), 15 USC § 1601, and the Home Ownership and Equity Protection Act of 1994 (HOEPA), 15 USC § 1639, et seq.

Neither Defendant has filed an answer to the Complaint/Amended Complaint. However, on June 18, 2010, Defendant Ocwen filed a Motion to Dismiss, which is set for hearing on August 31, 2010. Plaintiffs have responded to the Motion to Dismiss with a memorandum in opposition and a Motion to Amend the Complaint (Ct. Rec. 17).

1   On July 12, 2010, Plaintiffs filed a Motion for Temporary Restraining Order (Ct. Rec.
2   26) and a Motion for Preliminary Injunction (Ct. Rec. 21) to enjoin the foreclosure sale
3   which is now scheduled for July 16, 2010.   Plaintiffs filed a certificate of service
4   representing that they served counsel for Defendants using the electronic filing system and
5   US mail.  Defendants Ocwen filed a written response prior to the hearing.  The hearing on
6   the motion for preliminary injunction is noted for hearing on August 31, 2010.

7   **II. *LEGAL STANDARD***

8   The purpose of a temporary restraining order is to preserve the status quo before a
9   preliminary injunction hearing may be held; its provisional remedial nature is designed
10  merely to prevent irreparable loss of rights prior to judgment. *Granny Goose Foods, Inc.*
11  *v. Bhd. of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 439, 94 S.Ct. 1113, 39 L.Ed.2d
12  435 (1974) (noting that a temporary restraining order is restricted to its "underlying
13  purpose of preserving the status quo and preventing irreparable harm just so long as is
14  necessary to hold a hearing, and no longer"). As such, an applicant for a temporary
15  restraining order is required to demonstrate "immediate and irreparable injury, loss or
16  damage." Fed. R. Civ. P. 65(b); *see also Caribbean Marine Serv. Co., Inc. v. Baldrige*, 844
17  F.2d 668, 674 (9th Cir. 1988).

18  The standard for issuing a temporary restraining order is similar to the standard for
19  issuing a preliminary injunction. C *Lockheed Missile & Space Co., Inc. v. Hughes Aircraft*
20  *Co*., 887 F.Supp. 1320, 1323 (N.D.Cal. 1995).  As set forth by the Supreme Court in 2008:

21  > plaintiffs seeking a preliminary injunction must establish that (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) a preliminary injunction is in the public interest.

24  *Sierra Forest Legacy v. Rey*, 577 F.3d 1015, 1021(9th Cir. 2009) (citing *Winter v. Natural*
25  *Res. Def. Council, Inc.*, --- U.S. ----, 129 S.Ct. 365, 374, 172 L.Ed.2d 249 (2008)). The
26  court notes that counsel did not cite *Winter* and instead relied upon case law articulating

ORDER - 3

the pre-*Winter* Ninth Circuit test. When applying for a temporary restraining order (and preliminary injunction), Plaintiffs must also comply with Fed.R.Civ.P. 65.

### III. *DISCUSSION*

#### A. Amended Complaint

On July 9, 2010, 21 days after the filing of the Motion to Dismiss, Plaintiffs filed an Amended Complaint as well as a motion requesting leave to amend. As Plaintiffs motion recognizes, Fed.R.Civ.P. 15(a) permits a party to amend <u>as a matter of course</u> within 21 days after service of a responsive pleading or 12(b) motion. The 2009 Rules Committee Notes note that this provision "will force the pleader to consider carefully and promptly the wisdom of amending to meet the arguments in the motion" and "may avoid the need to decide the motion or reduce the number of issues to be decided..." *See* FRCP 15, 2009 Rules Committee Note.

Plaintiffs' Amended Complaint was filed on the 21st day after service of the Rule 12 motion. Accordingly, leave of court to amend is not required and Plaintiffs' Motion to Amend **(Ct. Rec. 17)** is **DENIED** as **MOOT**. The court notes that Ocwen is not opposed to the amendment, and contends Plaintiffs' allegations fail to state a claim, even as amended. *See* Ct. Rec. 30 [Defendant's Memo in Opposition] at 1 n.1.

#### B. Likelihood of Success on the Merits

Under *Winter*, the first required element is the demonstration of a likelihood of success on the merits. 129 S.Ct. at 374.

Plaintiffs allege in the Amended Complaint that in March 2008 they began trying to complete a loan modification with Ocwen. Ocwen instructed Plaintiffs on the steps to obtain the modification and over the course of time the Plaintiffs sent Ocwen documents via email, fax, and certified mail. Plaintiffs allege that Ocwen claimed that the documents were not received. Attached to the Amended Complaint are letters from a five month period mailed to Ocwen at four *different* Florida and Delaware addresses. Notably the

ORDER - 4

1 Plaintiffs' mail sent to the address listed for Ocwen in the Notice of Default was returned
2 undeliverable. Plaintiffs allege Ocwen misrepresented that it did not receive the documents
3 and that it was working on a loan modification, as the loan modification was never
4 completed.

**1. Breach of the Implied Covenant of Good Faith and Fair Dealing**

6 Plaintiffs' first claim for relief alleges Defendant Ocwen has violated a covenant of
7 good faith and fair dealing. A prerequisite for any action for breach of this covenant is the
8 existence of a contractual relationship between the parties, because the covenant is an
9 implied term in the contract. Ocwen argues Plaintiffs have failed to identify the contract
10 giving rise to the covenant. However, the Amended Complaint could be liberally
11 construed to suggest that the loan documents or the Deed of Trust was the underlying
12 contract that allegedly gave rise to the covenant of good faith and fair dealing. Plaintiffs
13 allege, though apparently do not have the discovery to know for sure, that Ocwen is the
14 assignee of "the contract" (presumably the note and deed of trust). It may or may not
15 have been a breach of the covenant of good faith and fair dealing to proceed with
16 foreclosure while Plaintiff was negotiating loan modification with the apparent loan
17 servicer, and while Plaintiff was operating under assurances that the modification would
18 be completed. Instituting foreclosure proceedings, while failing to or hindering the
19 borrowers further opportunity to refinance, could potentially be a breach of this duty. The
20 court is not willing to determine, in the absence of competent briefing and record
21 evidence, whether the contract terms potentially relevant here (e.g. the original loan, the
22 deed of trust, any assignments of the obligations in these documents) establishes a
23 contractual relationship sufficient to give rise to an obligation of good faith and fair
24 dealing. However, this possibility requires the court to at this time consider that Plaintiffs
25 have a potential likelihood of success on the merits.

**2. Fraud and Negligent Misrepresentation**

ORDER - 5

Plaintiffs second and third claims are for fraud and negligent misrepresentation. The court is unable to evaluate the likelihood of success of these claims as Plaintiffs have not pled the circumstances of the alleged fraud and/or negligent misrepresentation with sufficient particularity, as required under the heightened Rule 9(b) standard. For example, Plaintiffs refer to having "began trying to complete a loan modification agreement", but do not describe the efforts made by either Plaintiffs or Ocwen. Plaintiffs describe the "process continues to present day", but Plaintiffs do not describe the process. Plaintiffs claim to have "sent documents over the course of the process," but do not describe what or when. As the details of the parties communications and the details of the affirmative representations allegedly made by Ocwen form the basis of the alleged fraud and misrepresentation, they are vital to the viability of the claims. Plaintiffs are granted leave to amend the Amended Complaint to address the deficiencies noted in this order. Should Plaintiff choose to file a Second Amended Complaint, they shall do so on or before **August 10, 2010**.

**3. Statutory Claims**

In this short time-frame, the court is willing to give the Plaintiffs the benefit of the doubt as to the likelihood of success on their bad faith, fraud and misrepresentation claims and issue the TRO. However, the court notes that Plaintiffs have not demonstrated a likelihood of success on their statutory claims for violation of the Washington Consumer Protection Act, and three federal statutes, RESPA, TILA, and HOEPA.

Plaintiffs' Consumer Protect Act claim is unlikely to succeed as presently pled as Plaintiffs have not pled alleged conduct which would suggest Ocwen's conduct was aimed at the public at large or is one that affects the public interest, an essential requirement of a consumer protection act claim. *See* M*ichael v. Mosquera-Lacy,*

165 Wash.2d 595, 604, 200 P.3d 695 (2009)(noting there must be a likelihood that additional plaintiffs have been or will be injured in exactly the same fashion). Accordingly, Plaintiffs' the CPA claim may be subject to dismissal.

In-so-far as Plaintiffs seek injunctive relief on their RESPA claim, Plaintiffs are not likely to succeed as RESPA would not entitle them to enjoin foreclosure and remain in their home. Numerous district courts have denied preliminary injunctions to RESPA plaintiffs on this basis. *E.g., Chung*, 2010 WL 841297 at *3; *Montes v. Quality Loan Service Corp.*, No. CV 09-5864 PSG (RCx), 2010 WL 114485, at *2 (C.D.Cal. Jan.5, 2010); *Pettie v. Saxon Mtg. Servs.*, No. C08-5089RBL, 2009 WL 1325947, at *3 (W.D.Wash. May 12, 2009). Thus Plaintiffs' RESPA claim would not entitle Plaintiffs to a TRO.

As to Plaintiffs TILA claim, Plaintiffs have not pled, or otherwise attested, facts which would establish their ability to tender *any* amount of the money owing on the loan, accordingly the court is unable to conclude Plaintiffs' claim for recission has any likelihood of success. *See* 15 U.S.C. § 1635(b)("the obligor shall tender the property"or "its reasonable value."). Plaintiff must allege an ability to tender in order to state a claim for recision under TILA.

Moreover, the only parties who can be liable for TILA violations are the original creditor and assignees of that creditor. 15 U.S.C. §§ 1640, 1641. Ocwen claims it is not an assignee, whereas Plaintiffs allege that it is an assignee (or should be treated as one). The confusion over Ocwen's role in the transaction appears hampered by the lack of discovery. Whether HOEPA applies also hinges on the role of the Defendants. Without additional facts than alleged in the Amended Complaint, it is impossible to assess the likelihood of success under TILA or HOEPA.

**C. Irreparable Harm**

ORDER - 7

The second element under *Winter* is the likelihood the Plaintiffs will suffer irreparable harm in the absence of a TRO. This element is obviously present; the real property at issue in the foreclosure is the Plaintiffs' principal and only residence.

### C. Balance of Equities

Absent injunctive relief, the property will be sold at a trustee's sale. At the same time, Defendants would continue to suffer unmitigated economic losses on their loan to Plaintiffs. The balance of equities tips in favor of Plaintiffs because the Loan remains secured by the Property. Equitable concerns dictate that foreclosure proceedings should be halted for the limited period set forth herein while the concerns raised by the Amended Complaint are addressed in court.

### D. Public Interest

The final consideration is whether a TRO is in the public interest. Given the current widespread financial crisis, skyrocketing unemployment, and the attendant plummet in home values, the public interest favors keeping them in their home while the instant lawsuit proceeds, at least until the court considers the Plaintiffs' Motion for Preliminary Injunction and Defendants' Motion to Dismiss. The court however does not disregard the fact that Plaintiffs appears to be in arrears on the loan.

## IV. *CONCLUSION*

The court finds Plaintiffs have sufficiently established the four elements necessary for issuance of a temporary restraining order. The apparent lack of information and/or confusion surrounding the roles of various entities in regards to the Plaintiffs' loan and loan modification attempt, suggests that the court must act cautiously and with deliberation unless and until the true facts emerge. Defendants shall promptly disclose to Plaintiffs copies of all relevant contracts (note, deed of trust, and/or assignments) so the parties can discuss and/or proffer them to the court at the time of the hearing on the preliminary injunction.

*Security Bond*

Federal Rule of Civil Procedure 65(c) states that the court may issue a temporary restraining order "only if the movant gives security in an amount that the court considers proper..."  The court has broad discretion in setting a security bond.  *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 882 (9th Cir. 2003).

The issuance of this TRO hinges on Plaintiffs immediate payment of **$820.51** toward the balance owed on Plaintiffs' loan, <u>which shall be mailed directly to defense counsel for Ocwen, who will promptly route the funds to the appropriate entity owed by Plaintiffs</u>. Payments of **$820.51** shall be due every 30-days hereafter, so long as the restraining order remains in place.  Should Plaintiffs fail to make the payments required, defense counsel shall notify the court and the restraining order will be lifted.

The court imposes no additional security bond. Here, Defendants face no realistic likelihood of harm from temporary restraint of the foreclosure proceedings. If the defendants' position is correct, then the loans are adequately secured by the very property in question. An additional bond is therefore not necessary in this case.

For the reasons stated above,

**IT IS HEREBY ORDERED THAT,**

1. Plaintiffs' Motion to Amend **(Ct. Rec. 17)** is **DENIED** as **MOOT**.  Plaintiffs are granted leave to file a Second Amended Complaint on or before **August 10, 2010** to correct the deficiencies noted by the court herein.

2. Plaintiffs' Motion for Temporary Restraining Order **(Ct. Rec. 26)** is **GRANTED**, subject to payment requirements set forth above.  The court hereby enjoins Defendants from proceeding with the foreclosure sale of the subject property at 6024 North Stevens, Spokane, Washington, for the duration of this restraining order.  The restraining order is effective up to the time of the ruling on Plaintiffs' Motion for Preliminary Injunction.

**DATED** this 14th day of July 2010.

ORDER - 9

1
2

<u>s/ Justin L. Quackenbush</u><br>
JUSTIN L. QUACKENBUSH<br>
SENIOR UNITED STATES DISTRICT JUDGE

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

ORDER - 10