UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DAVID JOERN and DENNIS JOERN,<br><br>  Plaintiffs,<br><br>  vs.<br><br>OCWEN LOAN SERVICING, LLC, a Florida Corporation, et al.,<br><br>  Defendants. | NO.   CV-10-0134-JLQ<br><br>**ORDER RE: MOTIONS TO DISMISS; CONTINUING TEMPORARY RESTRAINING ORDER; RESERVING DECISION ON MOTION FOR PRELIMINARY INJUNCTION** |

On August 31, 2010 the court heard oral argument on Defendant Ocwen Loan Servicing's Motion to Dismiss (Ct. Rec. 9) and Plaintiffs' pending Motion for Preliminary Injunction (Ct. Rec. 21). Plaintiffs were represented by Alan McNeil and legal intern Sophia Medina. Attorney Robert Norman Jr. participated on behalf of Ocwen. Counsel for Defendant Quality Loan did not appear. The following Order is intended to memorialize and supplement the oral rulings of the court.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiffs are brothers who reside at and are the owners through inheritance of their family home located in Spokane, Washington. In September 2006, Plaintiffs took out a line of credit against their home, through Fidelity Mortgage, in the amount of $97,960.00. Plaintiffs were required to make monthly payments in the amount of $852.88 per month

ORDER - 1

on the mortgage. Ct. Rec. 16 at ¶2.14.  In May 2007, Plaintiffs refinanced their loan and borrowed $121,000 against their home, through Fidelity Mortgage. *Id*. At ¶ 2.16. Monthly payments were to be $820.51. *Id*.  Defendant Ocwen Loan Servicing, LLC ("Ocwen") was the loan servicer under Fidelity. *Id*. at ¶ 2.19.  Plaintiffs subsequently defaulted on the loan. On February 18, 2010 Defendant Quality Loan issued a Notice of Default, the first step in a foreclosure action. Ct. Rec. 16.  At the time the Notice was issued, Plaintiffs were six payments in arrears, from 9/1/2009 to 2/12/2010. *Id*.  On April 15, 2010, Quality Loan issued a Notice of Trustee's Sale stating that the property would be sold. Ct. Rec. 16.

Plaintiffs filed the instant action on April 30, 2010.  The Complaint (and its later two amendments) asserts seven claims associated with the Defendants' dealings with Plaintiffs in regard to their home equity loan including: (1) Real Estate Settlement Procedures Act (RESPA ), 12 USC § 1601; (2) the Truth-in-Lending Act (TILA), 15 USC § 1601; (3) the Home Ownership and Equity Protection Act of 1994 (HOEPA), 15 USC § 1639, et seq.; (4)  breach of covenant of good faith and fair dealing; (5) fraud; (6) negligent misrepresentation; and (7) the Washington Consumer Protection Act.  The most recently filed Second Amended Complaint ("SAC") adds a claim for breach of contract.

In lieu of an Answer, on June 18, 2010, Ocwen filed a Motion To Dismiss requesting the court to dismiss the Complaint in its entirety. On July 12, 2010, Plaintiff simultaneously filed a Motion for Temporary Restraining Order (TRO) and the Motion for Preliminary Injunction.  After an expedited TRO hearing held the day after Plaintiffs filed their motions, the court granted the requested TRO and enjoined the July 16, 2010 foreclosure sale of the subject property, subject to the payment of the monthly obligations on the mortgage.   The TRO remains effective pending the ruling on the preliminary injunction. Ct. Rec. 31.

ORDER - 2

## II. MOTIONS TO DISMISS

Plaintiff responded to the Motion to Dismiss on June 29, 2010. Ct. Rec. 13. Quality Loan did not join in that Motion. Ocwen did not Reply to Plaintiffs' Response to this initial Motion To Dismiss. After receiving the Motion To Dismiss, Plaintiffs filed an Amended Complaint and their Response to the Motion To dismiss. Ct. Rec. 16. In the TRO Order, the court granted Plaintiffs leave to amend yet a second time, explaining that their fraud claims failed to meet the failed to meet the heightened pleading standard for fraud under Federal Rule of Civil Procedure 9(b). On August 4, 2010, Plaintiffs timely filed the Second Amended Complaint ("SAC"). The SAC adds a claim for breach of contract and expands upon the other allegations. Ct. Rec. 44. The day before the August 31, 2010 hearing, Ocwen filed a Motion to Dismiss the Second Amended Complaint. Ct. Rec. 52. As the arguments made in the second Motion To Dismiss are similar to the first motion and straightforward, the court herein considers all of the arguments raised by Ocwen, and expedites ruling on the second motion without the need for further responsive briefing. The Second Amended Complaint is the operative complaint.

**B. Legal Standard**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed against a defendant for failure to state a claim upon which relief can be granted against that defendant. A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal may be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1988). A motion to dismiss should be granted if a plaintiff fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 569, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant

has acted unlawfully." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 556).

Allegations of material fact are taken as true and construed in the light most favorable to the non-moving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). "[A] court may take judicial notice of 'matters of public record' " and may also consider "**[d]ocuments whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading**," without converting a motion to dismiss under Rule 12(b)(6) into a motion for summary judgment. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001) (*quoting Mack v. South Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986)). The court need not, however, accept as true pleadings that are no more than legal conclusions or the "formulaic recitation of the elements" of a cause of action. *Iqbal*, 129 S.Ct. at 1950. "Determining whether a complaint states a plausible claim for relief ... [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*.

**C.  RESPA**

Plaintiff alleges Ocwen violated the Real Estate Settlement Procedures Act, 12 U.S.C. § §2601 et seq., by failing to respond to multiple Qualified Written Requests ("QWR") seeking information regarding their loan. Plaintiffs assert that the failure to respond has "severely limited their ability to determine the status of their account." A plaintiff alleging violation of RESPA section 2605 must show: (i) that the servicer failed to adhere to the rules governing a QWR; and (ii) that the plaintiff incurred "actual damages" as a consequence of the servicer's failure. See 12 U.S.C. § 2605. For the purposes of RESPA, a QWR is defined as "a written correspondence [ ] that ... includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error **or provides sufficient detail to the servicer regarding other information sought by the**

ORDER - 4

1 **borrower**." 12 U.S.C. § 2605(e)(1)(B). A loan servicer has the duty to act when it receives
2 a QWR "for information relating to the servicing of the loan." 12 U.S.C. § 2605(e)(1)(A).
3    Ocwen initially sought dismissal of this claim on the basis that the (original)
4 Complaint failed to attach a copy of the QWRs and failed to allege they included the
5 statutorily required statement of reasons, explaining why they believed the account to be
6 error. Plaintiffs thereafter attached the alleged QWRs to the SAC. The letters specifically
7 identify the borrowers, the loan number, ask the recipient to treat the letter as a QWR, and
8 specifically identify the information sought by the borrower. Ocwen has not demonstrated
9 that the letters do not qualify as QWRs under RESPA.
10    Ocwen's second-filed Motion To Dismiss seeks dismissal of the RESPA claim on the
11 basis that it fails to allege that plaintiff incurred "actual damages" as a consequence of the
12 servicer's failure to respond to the QWR. The alleged restriction on Plaintiffs "ability to
13 determine the status of their account" would not qualify as a pecuniary loss, however, the
14 court notes that the majority of courts consistently found that RESPA's actual damages
15 provision includes recovery for emotional distress. *Carter v. Countrywide Home Loans,*
16 *Inc.*, 2009 WL 1010851 at *3 (E.D.Va.) (disagreeing with *Katz v. Dime Sav. Bank*, 992
17 F.Supp. 250 (W.D.N.Y.1997); *In re Tomasevic*, 273 B.R. 682 (Bankr.M.D.Fla.2002));
18 *Ploog v. Homeside Lending, Inc.*, 209 F.Supp.2d 863, 870 (N.D.Ill.2002) (holding that
19 "RESPA is a consumer protection statute and RESPA's actual damages provision includes
20 recovery for emotional distress"). Though the SAC does not expressly assert emotional
21 distress as a basis for actual damages, this pleading deficiency could be cured by
22 amendment.
23    At oral argument, Ms. Medina responded to Ocwen's argument asserting that RESPA
24 also permits Plaintiffs to recover up to $1,000 in statutory damages. Statutory damages
25 are permissible in the event of a pattern or practice of non-compliance. 12 U.S.C. §
26 2605(f)(1). To state a plausible claim for statutory damages then, Plaintiffs must plead

ORDER - 5

1  facts which would support a finding of a pattern or practice of non-compliance. Courts
2  have interpreted the term "pattern or practice" in a federal statute, not a term of art, but
3  rather as defined according to the usual meaning of the words. *See In re Maxwell*, 281
4  B.R. 101, 123 (Bankr.D.Mass. 2002) (*citing Cortez v. Keystone Bank, Inc*., No. 98-2457,
5  2000 WL 536666, *10 (E.D.Pa. May 2, 2000)). "The term suggests a standard or routine
6  way of operating." *In re Maxwell*, 281 B.R. at 123; *In re Tomasevic*, 273 B.R. 682
7  (Bankr.M.D.Fla.2002) (failure to respond to one qualified written request did not amount
8  to a "pattern or practice"); *Ploog v. HomeSide Lending, Inc*., 209 F.Supp.2d 863, 869
9  (N.D.Ill. 2002) (failure to respond to qualified written requests on five occasions was
10 sufficient to establish a pattern or practice).

11   Though the SAC does not mention the "pattern or practice" claim, Plaintiffs have
12 alleged Ocwen has failed to respond to all of their QWRs, and there are at least five of
13 them attached to the SAC ranging from November 2009 to April 2010. Accordingly,
14 Plaintiffs' statutory damages claim is not subject to dismissal for failure to state a claim.
15 The court concludes that three successive failures to timely acknowledge and/or respond to
16 a QWR might well constitute a pattern or practice of noncompliance. Defendant Ocwen's
17 explanation for such conduct might weigh against such finding, however that would be an
18 issue of fact for trial. Discovery might also reveal more institutional-wide practices
19 supporting or opposing this claim.

20   Though Plaintiffs' claims for actual and statutory damages suffer from pleading
21 deficiencies, each can be conceivably cured by amendment. The Third Amended
22 Complaint must clearly set forth the factual basis for the claims under RESPA for statutory
23 and actual damages. In addition, Plaintiffs should set forth when they sent each QWR, at
24 least summarize their contents, and indicate to whom they were sent and the method by
25 which they were sent.

26 **D. TILA/HOEPA**

The Truth in Lending Act ("TILA") seeks to protect credit consumers by mandating "meaningful disclosure of credit terms." 15 U.S.C. § 1601(a). The Home Ownership Equity Protection Act ("HOEPA") is an amendment to TILA designed to prevent some predatory lending practices targeting vulnerable consumers. 15 U.S.C. § 1639.  Plaintiffs' SAC seeks damages and to have their loan rescinded under the Truth in Lending Act based upon *Fidelity* Mortgage's alleged failed to provide material disclosures required by TILA at the time their loan closed on May 15, 2007.   Plaintiffs assert Ocwen is liable under HOEPA for *Fidelity* having granted the loan without consideration of the Plaintiffs ability to repay.

Ocwen asserts these claims are time-barred by the statute of limitations, which both TILA and HOEPA share.  Under these statutes, civil damage claims are subject to a one-year statute of limitations and claims for rescission have a three-year statute of limitations. See 15 U.S.C §§ 1640(e), 1635(f).  Plaintiffs' original complaint was filed and served just days shy of the three-year anniversary of the date their loan closed.  Plaintiffs' HOEPA and TILA claim for damages are time-barred and are **DISMISSED**.

Although claims for recission are timely, the difficulty with Plaintiffs recission claims are that Plaintiffs paint the lender and the loan servicer with the same brush, without distinguishing the role of Ocwen, as loan servicer, played.   The only parties who can be liable for TILA/HOEPA violations are the original creditor and assignees of that creditor in certain situations. 15 U.S.C. §§ 1640, 1641.  However, a servicer of a consumer obligation "shall not be treated as an assignee of such obligation ... unless the servicer is or was the **owner** of the obligation." Id. § 1641(f).  According to Ocwen, it can not be held liable because its only role was that of a servicer, and never an owner.

The SAC alleges Ocwen is a loan servicer and is an assignee of Fidelity Mortgage. But it contains no allegations that Ocwen ever possessed any ownership interest in Plaintiffs' obligations and, as such, it cannot be held liable on this claim.  Plaintiffs argue

ORDER - 7

this case is "factually similar" to a case wherein the loan servicer had *refused* to reveal who held the loan and so the motion to dismiss was denied without prejudice pending further discovery as to who the holder of the loan was.   However, the Notice of Default and other documents attached to the SAC indicate that the current owner/beneficiary of the Note is "HSBC Bank USA, N.A., as Trustee for the registered holders of Renaissance Equity Loan Asset-Backed Certificates, Series 2007-3."

It is inappropriate and unnecessary for Plaintiffs to sue a party in an effort to discover information as to whether there is a factual basis for a claim.  Federal rules permit Plaintiffs to obtain discovery from nonparties.  *See* Fed.R.Civ.P 45.  The court **GRANTS** the motion to dismiss the TILA and HOEPA claims for recission on the basis that there is no allegation or basis for the contention that the present Defendants were creditors or servicers who should be treated assignees because they were owners of the obligation. Amendment of the pleadings could always be requested should discovery reveal a factual support for Plaintiffs' claim against these Defendants.  In light of the court's ruling, the court need not therefore consider Ocwen's alternative argument that the TILA claim must fail because Plaintiffs have failed to allege the ability to tender the principal balance of the subject loan.

**E. State Law Claims**

   **a. Good faith and fair dealing/Breach of Contract**

Ocwen also moves to dismiss Plaintiffs' claim for breach of the covenant of good faith and fair dealing.  The SAC provides more specificity as to the basis of this claim. It alleges that Ocwen is a participant in the Home Affordable Modification Program ("HAMP") and signed a Servicer Participation Agreement (SPA) to become a member of that program. Plaintiffs assert they are an intended third-party beneficiary of the SPA and assert a new breach of contract and this bad faith claim there upon.  Ocwen's second Motion to Dismiss

requests dismissal of this claim on the grounds that Plaintiffs lack standing to enforce the SPA.

This precise issue was recently thoroughly analyzed by Judge Houston in *Simmons v. Countrywide Home Loans, Inc.*, 2010 WL 2635220(S.D.Cal. June 29, 2010). As Judge Houston pointed out, the Ninth Circuit has recently explained that "[d]emonstrating third-party beneficiary status in the context of a government contract is a comparatively difficult task" requiring examination of the " 'precise language of the contract for a 'clear intent' to rebut the presumption that the [third parties] are merely incidental beneficiaries.'" *County of Santa Clara v. Astra USA, Inc.*, 588 F.3d 1237 (9th Cir. 2009). Judge Houston held that the borrowers, as "incidental beneficiaries" lacked standing to enforce the SPA/HAMP contract. "Qualified borrowers such as plaintiffs here cannot reasonably rely on a manifested intent to confer rights upon them since the Agreement does not require that Countrywide modify all eligible loans." The court finds the reasoning of Judge Houston to be well-founded.

Plaintiffs have not plead facts demonstrating a plausible claim to relief for breach of contract or breach of the covenant of good faith and fair dealing. Plaintiffs have not identified any terms of the SPA/HAMP which clearly expresses an intent to confer third party beneficiary status upon them. Accordingly, these contract claims are DISMISSED.

**b. Fraud and Negligent Misrepresentation**

Plaintiffs' state law claims for common law fraud and negligent misrepresentation (which have the same factual basis) fail to meet the heightened pleading standards of Rule 9(b) of the Federal Rules of Civil Procedure. In Washington the essential elements of fraud are: (1) a representation of an existing fact; (2) the fact is material; (3) the fact is false; (4) the defendant knew the fact was false or was ignorant of its truth; (5) the defendant intended the plaintiff to act on the fact; (6) the plaintiff did not know the fact was false; (7) the plaintiff relied on the truth of the fact; (8) the plaintiff had a right to rely

ORDER - 9

on it; and (9) the plaintiff had damages. *Baertschi v. Jordan*, 68 Wash.2d 478, 482, 413 P.2d 657 (1966). The tort of negligent misrepresentation occurs when the defendant, in the course of business, profession, employment, or a transaction in which the defendant has a pecuniary interest, *negligently* supplies false information for the guidance of others in their business transactions, and the plaintiff justifiably relies to his detriment. *Baddeley v. Seek*, 138 Wash. App. 333, 156 P.3d 959 (Div. 3 2007). To succeed on a claim for negligent misrepresentation the plaintiff must be able to present evidence that is clear, cogent and convincing. *Van Dinter v. Orr*, 157 Wash. 2d 329, 138 P.3d 608 (2006)

Under the heightened pleading requirements for claims of fraud (and negligent representation when the claims are based on the same set of facts) under Federal Rule of Civil Procedure 9(b), "a party must state with particularity the circumstances constituting the fraud." Fed.R.Civ.P. 9(b). The plaintiffs must include the "who, what, when, where, and how" of the fraud. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1006 (9th Cir. 2003) (citation omitted). "The plaintiff must set forth what is false or misleading about a statement, and why it is false." *Decker v. Glenfed, Inc.*, 42 F.3d 1541, 1548 (9th Cir.1994).

The SAC suffers from the same problems that the initial Complaint suffered from, which were noted by the court in the TRO. Plaintiffs assert in the SAC that Ocwen "represented" "they were working to provide them with a loan modification", gave them "reassurances that the modification was in process" (para 10.12) "of completing" (para 10.10), and "repeatedly asked for information which the Plaintiffs had already sent" (para 10.11) them. Plaintiffs allege the representations were false because "Ocwen failed to provide a loan modification" and "instead scheduled the sale of Plaintiffs' home."

Plaintiffs' allegations of fraud/negligent misrepresentation are insufficient under Rule 9(b). <u>They do not identify specific instances of a misrepresentation.</u> Plaintiffs must identified with particularity the when, what, how, who, of the alleged "reassurances" they received. Plaintiffs never identify what was said, how it was said, when it was said, where

ORDER - 10

it was said, or how exactly they were misled. Plaintiffs allege that the misrepresentations were "to their detriment" but they fail to plead how the misrepresentation caused them any injury.

Plaintiffs fraud and negligent misrepresentation claim are **DISMISSED** without prejudice, and with leave to amend in the Third Amended Complaint.

**c. Washington Consumer Protection Act**

The five elements required to establish a violation of the CPA are: "(1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; (5) causation." *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780, 719 P.2d 531 (1986)

The TRO previously advised Plaintiffs that their Consumer Protect Act claim was likely to be dismissed and unlikely to succeed as presently pled because Plaintiffs had not pled alleged conduct which would suggest Ocwen's conduct was aimed at the public at large or is one that affects the public interest, an essential requirement of a consumer protection act claim. *See Michael v. Mosquera-Lacy*, 165 Wash.2d 595, 604, 200 P.3d 695 (2009)(noting there must be a likelihood that additional plaintiffs have been or will be injured in exactly the same fashion).

The SAC alleges that Ocwen's "shady business practices" have "the possibility to affect homeowners" in Washington and nationwide, and takes on significance right now when the housing market has seen a collapse. The transaction herein is a type that could be construed both as a private dispute and a consumer transaction. In consumer transactions the following inquiries are relevant to establish public interest: (1) Were the alleged acts committed in the course of defendant's business? (2) Are the acts part of a pattern or generalized course of conduct? (3) Were repeated acts committed prior to the act involving plaintiff? (4) Is there a real and substantial potential for repetition of defendant's conduct after the act involving plaintiff? (5) If the act complained of involved a single

ORDER - 11

1 transaction, were many consumers affected or likely to be affected by it? No one of these
2 factors is dispositive, nor is it necessary that all be present.
3     Though the SAC does not allege that the Defendants' conduct was part of a pattern of
4 generalized conduct, Plaintiffs allegations are minimally sufficient to plead a Consumer
5 Protection Act violation.  Defendants' motion to dismiss as to the CPA claim is **DENIED**.

**III. MOTION FOR PRELIMINARY INJUNCTION**

On August 3, 2010, Ocwen responded to the Motion for Preliminary Injunction (Ct. Rec. 36) and Plaintiffs have replied (Ct. Rec. 43).  "The proper legal standard for preliminary injunctive relief requires a party to demonstrate 'that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir.2009), *quoting Winter v. Natural Res. Def. Council, Inc.*, --- U.S. ----, 129 S.Ct. 365, 374 (2008).

A Ninth Circuit panel has found that post- *Winter*, this circuit's sliding scale approach or "serious questions" test survives "when applied as part of the four-element Winter test." *Alliance for Wild Rockies v. Cottrell*, No. 09-35756, 10855, 10865 (9th Cir. July 28, 2010) "In other words, 'serious questions going to the merits,' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the Winter test are also met." *Id*.

The court **RESERVES** ruling on the Plaintiffs' Motion for Preliminary Injunction pending the filing of Plaintiffs' Third Amended Complaint.  If Ocwen seeks summary judgment on the Third Amended Complaint the issue can be more thoroughly addressed. If upon amendment, Plaintiffs are unable to demonstrate that they are likely to succeed on their fraud and/or negligent misrepresentation claims, then the preliminary injunction will likely be **DENIED**, as injunctive relief is unavailable under RESPA.

**IV. CONCLUSION**

ORDER - 12

**IT IS HEREBY ORDERED:**

1. Ocwen's Motions to Dismiss (Ct. Rec. 9 and Ct. Rec. 52) are **GRANTED IN PART** and **DENIED IN PART** and **RESERVED IN PART**. Plaintiffs' TILA, HOEPA, Breach of Contract, and Breach of Covenant of Good Faith and Fair Dealing claims are **DISMISSED** without leave to amend. The court **RESERVES** decision on the Motion To Dismiss Plaintiffs' RESPA, Fraud, Negligent Misrepresentation claims pending Plaintiffs' final amendment of their claims in a Third Amended Complaint. Defendants' Motion To Dismiss the CPA claim is **DENIED**.

2. Plaintiffs' Motion for Preliminary Injunction **(Ct. Rec. 21)** is **RESERVED**. The Temporary Restraining Order (**Ct. Rec. 31**) shall continue until further order of the court.

3. Plaintiffs' Third Amended Complaint shall be filed on or before **SEPTEMBER 23, 2010**. Plaintiffs shall simultaneously file supplemental materials on the Motion for Preliminary Injunction, regarding their likelihood of success on the merits and explaining whether the Plaintiffs state law claims provide an independent basis for issuance of a preliminary injunction.

4. Defendants are required to file their **ANSWERS** to the Third Amended Complaint within **14 days** after service.

5. Within **14 days** after service of the Third Amended Complaint, Ocwen may file a supplemental memorandum, responding to Plaintiffs' supplement on the motion for preliminary injunction and supplementing the Motion to Dismiss.

6. Plaintiffs and Ocwen shall find a mutually acceptable date and time, in consultation with court's judicial assistant, Margaret Buckner, to re-note their preliminary injunction and 12(b)(6) motions for further hearing.

The Clerk is hereby directed to enter this Order and furnish copies to counsel.

DATED this 2nd day of September, 2010.

s/ Justin L. Quackenbush

ORDER - 13

JUSTIN L. QUACKENBUSH
SENIOR UNITED STATES DISTRICT JUDGE

ORDER - 14